## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

XL SPECIALTY INSURANCE CO.     §
          §
          §   CIVIL ACTION NO. C-03-246
          §
KIEWIT OFFSHORE SERVICES, LTD.,   §
et al.                  §

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT IN PART DENYING DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT IN PART AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE: STATUTORY EMPLOYER DEFENSE AND BORROWED SERVANT DEFENSE

Pending before this Court is defendant's Motion for Final Summary Judgment (D.E. 135) and plaintiff's Motion for Summary Judgment Re: Statutory Employer Defense and Borrowed Servant Defense (D.E. 129). The Court held a hearing on both motions. For the reasons discussed herein, the Court GRANTS defendant's Motion for Final Summary Judgment in part, DENIES defendant's Motion for Final Summary Judgment in part, and DENIES plaintiff's Motion for Summary Judgment Re: Statutory Employer Defense and Borrowed Servant Defense.

## I. FACTS AND PROCEDURAL HISTORY

The undisputed facts are as follows. Kiewit Offshore Services, LTD ("Kiewit") was hired as the general contractor to perform welding and fitting work on the Skyway Bridge San Francisco Bay Project. Kiewit entered into a subcontract with R.B.T. Welders, Inc ("RBT"). Under the terms of the subcontract, RBT provided welders to Kiewit to work on the project at Kiewit's facility in Ingleside, Texas ("the Ingleside

Plant"). On January 6, 2003, an explosion at the Ingleside Plant killed Ernesto Moreno and Mann Van Nguyen. Ernesto Moreno was Kiewit's employee, and Mann Van Nguyen was RBT's employee.

The explosion occurred after Nguyen entered a confined space, resembling a large steel box, to perform a weld repair. The steel box contained an explosive mixture of gasses. After Nguyen entered the gasses ignited and there was an explosion. The force of the explosion caused the roof of the steel box to fly into the air. Nguyen was conscious after the explosion but suffered from third degree burns over sixty-five percent of his body. He lived for one week at Brooks Army Medical Center in San Antonio before dying on January 13, 2003. Moreno, who had been standing on the roof of the box when it exploded, was found dead at the scene.

The relatives of Moreno and Nguyen filed a lawsuit against Kiewit and RBT in the County Court at Law No. 4 in Nueces County, Texas ("the underlying lawsuit"), alleging that RBT and Kiewit were negligent for operating the Ingleside Plant without following and implementing an adequate safety program for welding in confined spaces. In addition to compensatory damages, the underlying lawsuit also sought exemplary damages for RBT and Kiewit's alleged gross negligence and malice (see Plaintiffs' Third Amended Petition, D.E. 136, exh. I, p. 18).

At the time of the explosion, RBT was carrying the following insurance policies: (1) an excess liability policy ("the XL policy") from XL Specialty Insurance Company ("XL"); (2) a commercial general liability insurance policy ("the Atlantic policy") from

Atlantic Insurance Company ("Atlantic"); and (3) a workers' compensation policy ("the American policy") from American Interstate Insurance Company ("American").  After the underlying lawsuit was filed, Kiewit demanded that XL defend and indemnify Kiewit as an additional insured under the XL policy, however, XL refused.  Instead, Atlantic tendered a defense to Kiewit.

RBT settled with the Moreno claimants for four million dollars.  After RBT's settlement with the Moreno claimants, Kiewit began negotiating its own settlement with the Nguyen claimants.  Prior to settlement, Kiewit's counsel in a report analyzed Kiewit's potential liability to the Nguyen claimants (July 22, 2003 letter from Michael Terry, D.E. 157, exh. D).  Kiewit's counsel prepared the report relying on the results of Kiewit's internal investigation as well as initial discovery.  Kiewit's counsel reported that Kiewit was potentially liable to the Nguyen claimants for: (1) failing to properly execute Kiewit's confined space entry permit system; (2) failing to implement a proper confined space ventilation system; and (3) providing a ventilation fan that was not explosive proof and that may have been the ignition source for the explosion.  The report concluded that if the underlying lawsuit was tried to verdict, Kiewit would probably be found liable and Nguyen's survival damages for the seven days he spend in the hospital with third-degree burns could reach twenty million dollars.[1]

---

[1] The report stated that the percentage of fault attributed to Kiewit would probably be between fifty and sixty percent because Nguyen would also be found somewhat negligent, but that the percentage of fault assigned to Kiewit could also be larger because Kiewit controlled the operations at the Ingleside Plant.

Eventually both RBT and Kiewit settled with the Nguyen claimants.  Using RBT's prior settlement with the Moreno claimants as a guide, Kiewit settled with the Nguyen claimants for four million dollars, and RBT settled with the Nguyen claimants for one million dollars.  After the settlement, XL filed a declaratory judgment action in this Court seeking a judgment that XL had no duty to defend or indemnify Kiewit for Kiewit's settlement with the Nguyen claimants because Kiewit was not an additional insured under the XL policy.  Kiewit then filed a third-party claim against RBT and a cross-claim against XL, arguing that RBT had a duty to defend and indemnify Kiewit under the indemnification provision in the RBT/Kiewit subcontract, and that the XL policy offered coverage for RBT's liability under the indemnification provision.  On August 31, 2004, this Court issued its Order on Motions for Summary Judgment (D.E. 111).  In that order, this Court held that: (1) RBT agreed to contractually indemnify Kiewit for Kiewit's alleged negligence leading to the explosion that killed Nguyen, and (2) the XL policy provides coverage for RBT's contractual duty to indemnify.

## II.  THE SUMMARY JUDGMENT MOTIONS

Summary judgment is appropriate only where there is no genuine issue of material fact.  Fed. R. Civ. P. 56.  The Court may consider all pleadings, depositions, affidavits, and other evidence before it, and "[t]he evidence must be  viewed in a light most favorable to the nonmovant."  *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228 (5th Cir. 2003).  Under Rule 56(e), "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading."  Fed. R. Civ. P. 56(e).  Instead, the adverse

party "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Id*. After the adverse party has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the adverse party, the Court will grant summary judgment. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

## A.  Kiewit's Motion for Final Summary Judgment[2]

Kiewit seeks a judgment that RBT must indemnify Kiewit for the entire four million dollar settlement payment, as well as for Kiewit's investigation expenses, attorney's fees, and costs. "Under Texas law where an indemnitee enters into a settlement with a third party, it may recover from the indemnitor only upon a showing that potential liability existed, and that the settlement was reasonable, prudent, and in good faith under the circumstances." *Insurance Co. of North America v. Aberdeen Ins. Services, Inc.*, 253 F.3d 878, 888 (5th Cir. 2001). "The settling indemnitee need not prove actual liability to the third party before recovering from the indemnitor." *Id*. (*citing Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 721 n.15 (5th Cir. 1995). The Court finds as a matter of law that Kiewit has met its burden and proven that it faced potential liability from the Nguyen claimants, and that the settlement was reasonable, prudent, and in good faith under the circumstances.

---

[2]  RBT and Kiewit have stipulated that XL's arguments regarding the "statutory employer defense" and the "borrowed servant defense" in XL's Motion for Summary Judgment (D.E. 129) are incorporated by reference into RBT's response to Kiewit's Motion for Final Summary Judgment (D.E. 137, exh. 1).

1.  **Kiewit's potential liablity**

In support of Kiewit's claim that it was potentially liable to the Nguyen claimants, Kiewit offers the affidavits of its in-house counsel and presettlement outside counsel, as well as the assessment of Kiewit's liability in Michael Terry's report.  Kiewit's summary judgment evidence regarding its potential liability is largely uncontroverted.

Kiewit was hired to construct bridge footings for the new Oakland Bay Bridge. This type of project was a new undertaking for Kiewit.  Constructing a bridge footing differed from Kiewit's normal work on offshore platforms because welding work on bridge footings must be done in enclosed spaces.  In order to fulfill Kiewit's responsibility of creating safe procedures that protected workers from the risks associated with welding in confined spaces, Kiewit's safety officer, Don Goodwin, prepared a procedures manual.  However, Goodwin had no experience working on structures like bridge footings (D.E. 136, exh. D, p. 9).

In order to provide adequate ventilation for the welding operations in the confined spaces, Kiewit set up a procedure that required all welding to be completed prior to the structure being fully enclosed.  This procedure was designed and based on Goodwin's interpretation of the term "enclosed spaces" as used in OSHA regulations.  Kiewit's counsel, however, was not convinced that Goodwin's interpretation of "enclosed spaces" was correct (*id*., p. 10).  In addition, there were instances where even in following Goodwin's procedures as implemented by Kiewit, welding would have to occur within

fully enclosed spaces.  In instances where this was required, Kiewit had no provision for ventilating the enclosed space.

Kiewit provided fans for welders who needed to work in enclosed spaces. However, the fans did not have explosive proof switches and were not placed fully outside the enclosed space when in use.  It was Kiewit's counsel's opinion that Goodwin's operating procedure created a foreseeable risk of an explosion if there was a gas leak within an enclosed space, and that Kiewit's procedures did not adequately protect Kiewit's employees from the hazards of welding in confined spaces (*id.*, p. 9, 11).

Mann Van Nguyen was working in an enclosed space on the bridge footing and using one of Kiewit's fans when the explosion occurred.  He was burned over sixty-five percent of his body and remained conscious for periods of time while in the hospital prior to his death (D.E. 136, exh. E, p. 5).  Nguyen was survived by a wife and three sons.  One of Nguyen's sons was working on the bridge footing at the time of the explosion and witnessed the event (*id.*).  After the explosion, Kiewit changed its safety procedures for working in confined spaces.  The changes required continuous ventilation with fans blowing fresh air into the bridge footings.  Kiewit's counsel testified that if Kiewit had provided its workers with adequate ventilation initially, the explosion that killed Nguyen never would have happened (D.E. 136, exh. D, p. 11).

Kiewit did not rush into a settlement with the Nguyen claimants.  Instead, Kiewit waited for RBT to settle its liability with the family of Ernesto Moreno and then used that settlement figure as the floor for negotiations with the Nguyen claimants.  There is

summary judgment evidence that Kiewit's counsel pursued certain defenses to its liability.  Kiewit's in-house counsel explored the possibility that Kiewit might have a defense to liability under Louisiana workers' compensation law and Kiewit also employed outside counsel to consider the defense (D.E. 136, exh. E, p. 6).  Both law firms retained by Kiewit advised that because the construction work was performed in Texas and the accident occurred in Texas, and because Kiewit paid workers' compensation benefits to its employees under Texas law, Louisiana workers' compensation law would probably not immunize Kiewit from suit (*id*.).

Kiewit also explored the possibility that Nguyen was contributorily negligent for the explosion.  Kiewit's presettlement counsel concluded that Nguyen was probably negligent for allowing an explosive mixture of gas to accumulate in the enclosed space, but that it would be very difficult to convince a jury of that fact in light of Nguyen's terrible injuries and Kiewit's own negligence in implementing the confined space welding procedures (D.E. 157, exh. D, p. 8) (D.E. 136, exh. D, p. 13-14).

In response to Kiewit's substantial summary judgment evidence regarding its potential liability, RBT joins XL in arguing that Kiewit was not potentially liable to the Nguyen claimants because Kiewit was immune from suit under either Louisiana or Texas workers' compensation law.  In addition, XL argues on its own that Nguyen was contributorily negligent in causing the explosion, while RBT argues on its own that Kiewit was solely negligent and grossly negligent for the explosion.

### a.  The Louisiana workers' compensation scheme

XL and RBT claim that under Texas choice of law rules, the Louisiana workers' compensation statute shields Kiewit, a Texas employer, from liability for the explosion that occurred at Kiewit's Ingleside Plant in Texas.[3]  In *Hughes Wood Products, Inc. v. Wagner,* the Texas Supreme Court held that § 184 of the Restatement (Second) of Conflict of Laws provides the "standards by which a court is to determine immunity from a tort suit when an employee is covered by workers' compensation insurance."  18 S.W.3d 202, 205 (Tex. 2000).  Section 184 states that:

> Recovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which:
> (a) the plaintiff has obtained an award for the injury, or
> (b) the plaintiff could obtain an award for the injury, if this is the state (1) where the injury occurred, or (2) where employment is principally located, or (3) where the employer supervised the employee's activities from a place of business in the state, or (4) whose local law governs the contract of employment under the rules of §§ 187-188 and 196.

Restatement (Second) Conflict of Laws (1971).  The *Wagner* court held that to satisfy § 184, defendants claiming immunity under Louisiana law in Texas must show "(1) that they would be immune from this suit under Louisiana workers' compensation law, and

---

[3]  In a diversity case, federal courts apply the choice of law rules of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 61 S.Ct. 1020, 1021 (1941). Therefore, the Court must apply Texas choice of law rules to determine if Louisiana law shields Kiewit from liability.

(2) that plaintiff has obtained or could obtain an award for his injury in Louisiana."  18 S.W.3d at 207.[4]

The summary judgment evidence establishes that RBT maintained a Louisiana workers' compensation policy with American, that RBT notified the Louisiana Office of Worker's Compensation of Nguyen's injury, and that American paid one million dollars to the Nguyen claimants in settlement of the claims made against RBT in the underlying lawsuit ("the RBT settlement").  However, to satisfy the second *Wagner* element, the RBT settlement must actually have been an award paid under the Louisiana workers' compensation scheme.  The summary judgment record is devoid of any evidence that would establish this fact.

The only summary judgment evidence XL and RBT have submitted in support of their contention that the RBT settlement payment to the Nguyen claimants was made under the Louisiana workers' compensation scheme is the affidavit of RBT's president, Russel J. Andras (D.E. 157, exh. A).  The Andras affidavit is deficient.  There is no documentation supporting the conclusory statement in the affidavit that "Nguyen's family received workers' compensation benefits under the Louisiana workers' compensation system through RBT's Louisiana workers' compensation coverage" (*id.*, p. 2), and no basis for this Court to conclude that Andras had personal knowledge of the legal reason

---

[4]  The *Wagner* court's formulation of § 184 may apply more broadly than the text of § 184 indicates because it omits the requirement that "the defendant is required to provide insurance against the particular risk."  However, because this Court finds that XL has failed to show that the Nguyen claimants have obtained, or could obtain, an award in Louisiana, this Court need not make an *Eerie* guess as to whether XL must also prove that Kiewit was required to obtain insurance in Louisiana.

for the RBT settlement.  In fact, RBT admits in its Response to Kiewit's Motion for Final Summary Judgment that "RBT's insurance carrier assumed the defense of the claims brought by Nguyen's estate against RBT.  It hired independent counsel and made a decision to settle based upon the advice of that independent counsel.  RBT had no control or input into that decision whatsoever.  *Why that insurance carrier chose to pay the claims to Nguyen are completely unknown to RBT*" (D.E. 137, p. 8) (emphasis added).  Therefore, XL and RBT have failed to raise a fact issue as to whether the Nguyen claimants ever received an award under the Louisiana workers' compensation scheme.

XL and RBT have also failed to raise a fact issue as to whether the Nguyen claimants could obtain an award under the Louisiana workers' compensation scheme.  The statute of limitations period for filing a formal claim for workers' compensation benefits is one year from the date of the accident.  *See* La. Rev. Stat. Ann. § 23:1032 (2006).[5]  The accident occurred on January 3, 2003 and there is no summary judgment evidence that the Nguyen claimants ever filed a formal claim for workers' compensation benefits.  However, XL and RBT argue that the one year limitations period was tolled by the RBT settlement payment and therefore the Nguyen claimants could still obtain workers' compensation benefits in Louisiana.  This argument fails for the same reasons the Court discussed previously; there is no competent summary judgment evidence that the RBT settlement payment was made under the Louisiana workers' compensation

---

[5]   Section 23:1209A provides that: "In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed."

scheme.  *See Wagner*, 18 S.W.3d at 209 ("It has been seven years since plaintiff was injured, and there is no proof in the summary judgment record that a formal claim was ever filed.  While there is evidence that [the employer] made some payments to plaintiff following his injury, there is nothing to show when the last payment was made and no indication that the payments were made under the Louisiana Workers' Compensation Act.  Consequently, defendants have failed to show that plaintiff could obtain an award for his injury under the Louisiana workers' compensation statute.").[6]

### b.  The Texas workers' compensation scheme

XL and RBT argue in the alternative that even if the Louisiana workers' compensation scheme does not provide Kiewit with immunity from suit for Kiewit's alleged negligence, the Texas workers' compensation scheme does.  Mann Van Nguyen was RBT's employee.  Therefore, for the Texas workers' compensation scheme to provide Kiewit with immunity from suit, Ngyuen must have been Kiewit's "borrowed servant."

"Under the borrowed servant or special employee doctrine, an employee of a general employer may become the special employee of another employer, if the other employer has the right of control."  *Guerrero v. Harmon Tank Co., Inc.*, 55 S.W.3d 19, 24 -25 (Tex.App.–Amarillo 2001, pet. denied) (*citing Esquivel v. Mapelli Meat Packing*

---

[6]  XL also argues contradictorily that the RBT settlement with Nguyen's family settled RBT's liability for its intentional acts in causing the explosion (D.E. 137, p. 4).  However, the Louisiana workers' compensation scheme does not provide employer's with immunity from suit for intentional acts.  *See* La. Rev. Stat. Ann. § 23:1032 (2006). Therefore, if XL's claim is true, the RBT settlement could not have been made under the Louisiana workers' compensation scheme.

*Company*, 932 S.W.2d 612, 614 (Tex.App.–San Antonio 1996, writ denied).  "The right

of control is important because the employer who has control would be exempted from

common-law liability if it was a subscriber to workers' compensation insurance."  *Id.*

(*citing Regalado v. H.E. Butt Grocery Co.*, 863 S.W.2d 107, 111 (Tex.App.–San Antonio

1993, no writ).  "The right of control is determined by examining the nature of the general

project, the nature of the work to be performed by the furnished employee, and the length

of the special employment.  The direction of the details and manner of work determines

which employer has the required 'right of control' of a borrowed servant and the most

significant factor in determining which employer controlled is who controlled the very

transaction out of which the injury arose."  *Id.* (*citing Hilgenberg v. Elam*, 198 S.W.2d

94, 95 (Tex. 1946)).

Section 6 of the subcontract between RBT and Kiewit provides: "Subcontractor

shall furnish all labor, *supervision*, tools, equipment, materials and supplies necessary for

the performance of this Subcontract in a proper efficient and workmanlike manner" (D.E.

139, exh. 3) (emphasis added).  Under the terms of the subcontract, Nguyen would not be

Kiewit's borrowed servant because RBT had the contractual responsibility to supervise its

employees on loan to Kiewit, including Nguyen.

XL and RBT's primary summary judgment evidence in support of their claim that

Nguyen was Kiewit's borrowed servant is an allegation in the underlying lawsuit that

"Mann Van Nguyen . . . was under the control supervision and direction of defendant

Kiewit" (see Plaintiffs' First Amended Petition, D.E. 129, exh. 1, p. 6).  However, at

most, this one sentence is a nonbinding admission that Kiewit, in carrying out its role as a general contractor, controlled certain aspects of Nguyen's work.  It is certainly not a conclusive admission that Kiewit controlled either the "details and manner" of Nguyen's work or the "very transaction out of which the injury arose."  *Hilgenberg*, 198 S.W.2d at 95.  RBT and XL provide no additional evidence that Kiewit exercised the level of control over Nguyen's work that is required to support a borrowed servant defense.

In addition, the underlying lawsuit alleged that Kiewit and RBT failed to warn Nguyen of the danger at the work area and that such failure constituted "gross negligence, malice, and callous disregard" and that "defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others" (Plaintiffs' Third Amended Petition, D.E. 136, exh. I, p. 18). Thus, Kiewit faced allegations that it was grossly negligent for intentionally acting with conscious indifference to the rights of Nguyen.  If those allegations were proven at trial, Kiewit would not have been immune from suit under the Texas workers' compensation scheme even if Nguyen was Kiewit's borrowed servant.  *See* Tex. Lab. Code § 408.001(b) (2005) ("This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer *or by the employer's gross negligence*.") (emphasis added).

On this summary judgment record, the Court cannot say that Kiewit was immune from suit under Louisiana or Texas law because there is considerable doubt that Kiewit

was entitled to protection under either state's workers' compensation scheme.  There is no evidence that the Nguyen claimants have obtained or could obtain an award for Nguyen's injury in Louisiana and there is no evidence that Kiewit was controlling the "detail and manner" of Nguyen's work.  Therefore, the Court holds that Kiewit has carried its burden and proven that it was potentially liable to the Nguyen claimants even in light of the defenses available under state workers' compensation law.[7]  The Court will now consider XL's claim that Nguyen was contributorily negligent and RBT's claim that Kiewit was solely negligent and grossly negligent.

### c.  Kiewit's alleged sole negligence, gross negligence, and Nguyen's contributory negligence

XL argues that Kiewit was not potentially liable to the Nguyen claimants because Nguyen was more than fifty percent at fault for the explosion.[8]  RBT takes a contrary position, arguing that Kiewit was solely negligent and grossly negligent for the explosion, and therefore the injuries and death to Nguyen are excluded from RBT's contractual duty to indemnify Kiewit.[9]  Thus, under XL and RBT's contradictory theories, Kiewit is put in the difficult position of arguing that it was negligent enough to support a finding of potential negligence, but not so negligent as to be solely negligent or grossly negligent.

---

[7]  RBT states in its response to Kiewit's motion that it "does not dispute that but for the 'statutory employer' and/or 'borrowed servant' defenses Kiewit was faced with certain liability" (D.E. 137, p. 12).

[8]  Under Texas law, if a party bears more than fifty percent of the responsibility for an accident, that party may not recover any damages.  Tex. Civ. Prac. & Rem. Code Ann. § 33.001 (Vernon 2005).

[9]  In the Court's August 31, 2004 order, the Court held that RBT had a contractual duty to indemnify Kiewit for Kiewit's own negligence for the explosion, provided that Kiewit was not solely negligent for the explosion (D.E. 111, p. 4).

In *Delta Engineering Corp. v. Warren Petroleum*, the Houston Court of Appeals addressed the indemnitor's burden of proof where an indemnitee is placed in the position of proving that it was potentially negligent but not contributorily negligent. 668 S.W.2d 770, 772 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The *Delta* court reasoned that:

> To recover under an indemnity agreement, the settling indemnitee must prove his "potential liability" as well as the reasonableness of the settlement between himself and the plaintiff. If an indemnitee in the above situation had the additional burden of proof on the contributory negligence issue, he would be required to take what appears to be two contradictory positions. He would be required to prove both his "potential liability," as well as his own "non-negligence," which is the absence of his actual liability. While these two positions may appear plausible and yield a consistent result, it can reasonably be argued that they are in absolute conflict. Moreover, we conclude that this would discourage settlements and that under certain conditions, it could easily create needless confusion . . . Therefore, we hold that the defense of concurrent or contributory negligence to an indemnity contract is an affirmative defense . . . which must be both pled and proven by the indemnitor.

*Delta*, 668 S.W.2d at 772-73. This Court finds the reasoning in the *Delta* court's opinion persuasive. Therefore, the Court holds that XL and RBT have the burden of proving that Kiewit was solely negligent, grossly negligent, or that Nguyen was contributorily negligent. *See also*, *Tesoro Petroleum Corp. v. Nabors Drilling USA*, 106 S.W.3d 118, 126 (Tex.App.–Houston [1st Dist.] 2002, pet. denied) ("A claim that a contractual exclusion precludes indemnity is an affirmative defense. . . . In support of its affirmative defense, [the indemnitor] bore the burden to raise a fact issue on each and every element of [the indemnitiee's] alleged gross negligence or willful misconduct so as to bring [the indemnitee's] claim within the exclusions in the indemnity agreement.").

Neither XL nor RBT raised Kiewit's sole negligence, gross negligence, or Nguyen's contributory negligence as an affirmative defense in their pleadings. Therefore, these defenses are waived. Fed. R. Civ. P. 8(c). However, even if the Court were to consider XL's claim that Nguyen was contributorily negligent, or RBT's claim that Kiewit was solely and grossly negligent for the explosion, neither party has satisfied its burden of proving these defenses.

XL relies on the statements in Kiewit's counsel's report analyzing Kiewit's potential liability to the Nguyen claimants (July 22, 2003 letter from Michael Terry, D.E. 157, exh. D). In that report, Kiewit's counsel predicted that "the percentage of fault attributed to Kiewit offshore would be between 50% and 60%" (*id*., p. 8). From this statement, XL argues that Kiewit was not potentially liable to Nguyen's family because "Kiewit had a potentially viable basis to avoid liability: if the plaintiff were just slightly more than 50% at fault, the Nguyen claimants would have had no right to recovery at all" (D.E. 170, p. 12). Undoubtedly, if a jury had found that Nguyen was greater than fifty percent at fault for the explosion, Kiewit would have escaped liability. However, Kiewit's counsel did not predict any such outcome, nor must Kiewit prove that Nguyen's percentage of negligence was less than Kiewit's. Instead, XL must prove such an outcome, and it has failed to do so.

RBT also has failed to carry its burden and prove that Kiewit was grossly negligent or solely negligent. Assuming *arguendo* that the indemnification provision excludes Kiewit's acts of gross negligence, RBT has failed to provide sufficient evidence to create

a fact issue that Kiewit was grossly negligent, or that the four million dollar payment is in settlement of Kiewit's gross negligence. The only summary judgment evidence that RBT has provided of either Kiewit's gross negligence or sole negligence for the explosion are a few statements in the affidavit of Kiewit's presettlement counsel. These statements do not conclusively satisfy the elements of gross negligence, nor do they show that Kiewit was solely negligent for the explosion.[10] In fact, Kiewit's counsel specifically noted that RBT's employee Nguyen was also negligent for allowing an explosive mixture of gasses to build up in the confined space (D.E. 157, exh. D, p. 8) (D.E. 136, exh. D, p. 13-14), but that due to the severity of Nguyen's injuries it would be difficult to convince a jury of his negligence. Furthermore, RBT must have thought that it bore some responsibility for the accident as well, or else the five million dollars in combined payments RBT made to the Nguyen and Moreno claimants were remarkably ill-advised.

On the other hand, Kiewit has offered overwhelming evidence of its potential liability to the Nguyen claimants. The affidavits Kiewit offers are uncontroverted on the following points: (1) Kiewit did not follow or correctly implement safety procedures for welding in confined spaces, and (2) Kiewit supplied the ventilation fans that were potentially the source of ignition for the explosion that killed Nguyen. Thus, Kiewit has

---

[10] The elements of gross negligence are "(1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *R & R Contractors v. Torres*, 88 S.W.3d 685, 707-08 (Tex.App.--Corpus Christi 2002, no writ) (*citing Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex.1998). "In reference to the first requirement, the extreme risk means the likelihood of serious injury to the plaintiff. In reference to the second requirement, ordinary negligence rises to the level of gross negligence when it can be shown that the defendant was aware of the danger but his acts or omissions demonstrated that he did not care to address it." *Id*. (*citing Louisiana-Pacific. Corp. v. Andrade*, 19 S.W.3d 245, 246-47 (Tex.1999)).

met its burden to establish as a matter of law that it faced potential liability to the Nguyen claimants.  The Court will now examine whether the settlement was reasonable, prudent, and in good faith under the circumstances.

## 2.  Reasonable, prudent and in good faith under the circumstances

Kiewit argues that its settlement was reasonable, prudent, and in good faith under the circumstances because the Nguyen claimants were represented by excellent counsel, Nguyen suffered from terrible injuries and remained conscious for periods of time prior to his death, and RBT and XL were aware that Kiewit planned on negotiating a settlement with the Nguyen claimants.   Kiewit's counsel points out that jury verdicts for burn victims in Nueces County can reach twenty million dollars.  In light of Nguyen's third-degree burns, XL and RBT's counsel admitted at the hearing on Kiewit's motion that if Kiewit was found liable, a judgment of at least four million dollars against Kiewit was likely.

XL and RBT respond to Kiewit's evidence by arguing that it was unreasonable for Kiewit to settle with the Nguyen claimants without aggressively pursuing defenses alleging the contributory negligence of Nguyen and immunity under the Texas and Louisiana workers' compensation scheme.  However, the Court has already held that on the summary judgment record before it, neither of those defenses would have insulated Kiewit from liability.  The Court finds that it was reasonable for Kiewit to rely on the advice of counsel in concluding that Louisiana law would not insulate Kiewit from liability, it was reasonable for Kiewit to believe that a jury would not find Nguyen

contributorily negligent, and it was reasonable for Kiewit to believe that it faced liability in excess of four million dollars.

Under the *Fireman's Fund* standard, Kiewit has the freedom to make an assessment of its liability and enter into a reasonable settlement. *Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.*, 490 S.W.2d 818, 824 (Tex. 1972). Neither XL nor RBT have cited any cases that require an indemnitee to aggressively pursue every available defense to a lawsuit prior to settlement in order for that settlement to be deemed reasonable. Furthermore, there is good reason not to hold a settling indemnitee to that standard. If the Court were to require Kiewit to prove that it would have been found liable even if it pursued all available defenses to judgment, that requirement would be the functional equivalent of requiring Kiewit to prove its actual liability. There is no such requirement in Texas law.

In addition, if RBT or XL wished to object to Kiewit's settlement with the Nguyen claimants on any ground, both parties had notice that Kiewit was involved in settlement negotiations. RBT argues that it was unreasonable and not in good faith for Kiewit to settle its liability with the Nguyen claimants without first advising XL and RBT of its intent to settle. However, Kiewit sent a letter to RBT's insurer XL demanding a defense to the Nguyen claimants' lawsuit and RBT was copied on that letter (D.E. 136, exh. H). Furthermore, RBT's counsel admitted at the hearing on Kiewit's motion that he was aware that Kiewit planned on settling its liability with the Nguyen claimants, and that the RBT settlement with the Moreno claimants was going to be used as a yardstick for

Kiewit's settlement.  It was no coincidence that Kiewit and RBT both settled with each other's employee for the exact same sum.  Therefore, the Court finds that RBT and XL were aware that Kiewit was engaged in settlement negotiations with the Nguyen claimants.[11]

The Court finds as a matter of law that Kiewit faced potential liability to the Nguyen claimants, and that Kiewit's settlement was reasonable, prudent, and in good faith under the circumstances.  RBT must indemnify Kiewit for the four million dollar payment.

### 3.  Attorney's fees and investigation expenses

Kiewit requests $76,295.00 in attorney's fees it expended in the lawsuit against RBT.  Paragraph 20 of the subcontract between Kiewit and RBT provides: "In the event that either party institutes suit in court against the other party . . . in connection with any

---

[11] RBT admits that from Kiewit's perspective the settlement was reasonable, however, RBT contends that this Court should determine the reasonableness of the settlement from the perspective of the indemnitor.  The Court declines to do so.  Under Texas law, reasonableness is determined from the perspective of the indemnitee.  *See Aerospatiale Helicopter Corp. v. Universal Health Services, Inc.*,  778 S.W.2d 492, 500 (Tex.App.—Dallas 1989, writ denied) ("It is necessary for [the indemnitee] to establish that *from its standpoint* the settlement was made in good faith and was reasonable and prudent under the circumstances.") (*citing Pan American Gas Co. v. Natural Gas Const. Corp.*, 418 S.W.2d 380, 381 (Tex.Civ.App.--Waco, 1967 writ ref'd n.r.e.)) (emphasis added).

disputed matter arising under this Subcontract, the prevailing party shall be entitled to recover all costs, expenses and attorneys fees."  (D.E. 139, exh. 3).  Therefore, Kiewit is entitled as the prevailing party to an award of its attorney's fees in prosecuting this lawsuit.  However, Kiewit also asks for an additional $12,000.00 in "estimated" attorney's fees for prosecuting this case to judgment and an additional $40,000.00 in "estimated" attorney's fees should there be an appeal.  The Court will not award attorney's fees without itemized bills and other supporting documentation.  Until Kiewit supplements the record with the proper documentation for the "estimated" attorney's fees, Kiewit is entitled only to $76,295.00.

Kiewit provides affidavits testifying that Kiewit spent a total of $397,614.50 to defend itself in the underlying litigation in Texas state court.  Kiewit was recently granted leave to amend its third-party action against RBT to assert a claim for these costs.  Fact issues remain as to whether these costs arose prior to Kiewit notifying Atlantic of the lawsuit against it.  Indeed, Kiewit admits as much in its Memorandum in Support of its Motion for Leave to File Second Amended Third-Party Claim (D.E. 133, p. 2) ("Normally, these fees would have been paid by Kiewit's insurance carrier; however, they were incurred prior to the carrier receiving notice of the claim.").  RBT partially satisfied its contractual obligation to provide Kiewit with a defense in the underlying lawsuit by obtaining the Atlantic Policy.  Therefore, RBT has raised a fact issue as to whether Kiewit should be entitled to recover these expenses from RBT.

## 4.  Prejudgment interest

Finally, the Court finds that Kiewit is entitled to prejudgment interest on the four million dollars at the statutory rate of six percent.  See Tex. Fin. Code Ann. § 302.002 (Vernon 2006).[12]  The Court finds that the indemnification provision in this case is sufficient "to constitute a contract ascertaining a sum payable" and that "the policy provides the conditions upon which liability depends and fixes a measure by which the sum payable can be ascertained with reasonable certainty, in light of the attending circumstances."  *National Fire Ins. Co. of Pittsburgh, Pa. v. Valero Energy Corp.*, 777 S.W.2d 501, 512 (Tex.App.--Corpus Christi 1989, writ denied).  Therefore, interest is awarded at six percent on the four million dollars.  The interest shall accrue daily from September 8, 2003, or thirty days from the date that Kiewit released the settlement payment to the Nguyen claimants.

## B.  XL's Motion for Summary Judgment Re: Statutory Employer Defense and Borrowed Servant Defense

The Court denies XL's Motion for Summary Judgment for the reasons discussed *supra*.  XL failed to prove that Kiewit was entitled to protection under either Louisiana or Texas workers' compensation law.

---

[12]  Section 302.002 provides:  "If a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year on the principal amount of the credit extended beginning on the 30th day after the date on which the amount is due. If an obligor has agreed to pay to a creditor any compensation that constitutes interest, the obligor is considered to have agreed on the rate produced by the amount of that interest, regardless of whether that rate is stated in the agreement."

### III.  CONCLUSION

In conclusion, the Court GRANTS defendant's Motion for Final Summary Judgment (D.E. 135) in part as to RBT's duty to indemnify Kiewit for the settlement payment, attorneys fees, and prejudgment interest, DENIES defendant's Motion for Final Summary Judgment (D.E. 135) in part as to RBT's duty to indemnify Kiewit for Kiewit's undocumented attorney's fees, litigation expenses and costs incurred in the underlying litigation, and DENIES plaintiff's Motion for Summary Judgment Re: Statutory Employer Defense and Borrowed Servant Defense (D.E. 129).

ORDERED this ___30th___ day of __March__, 2006.

HAYDEN HEAD
CHIEF JUDGE